# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **BEAU WOLINSKY,** on behalf of himself and all others similarly situated, **Plaintiffs,** v. **RUSSELL R. WASENDORF, SR., RUSSELL R. WASENDORF, JR., NEIL J. ASLIN, BRENDA CUYPERS, SUSAN O'MEARA** and **JOHN DOES 1–10,** **Defendants.** | Civil Action No: _____ Hon. _____ **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Beau Wolinsky, on behalf of himself and of all others similarly situated, ("Plaintiffs") by their undersigned attorneys, for their Complaint against the above-named Defendants ("Defendants"), upon knowledge as to matters relating to themselves and upon information and belief as to all other matters, allege as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction based on 28 U.S.C. §1331 and §1337 and 7 U.S.C. §1 et seq.

2. Venue is proper under 28 U.S.C. § 1391(a) and (b), and 7 U.S.C. §25(c), because Defendants' unlawful course of conduct occurred in large part in this District.

### SIGNIFICANT NONPARTIES

3. Significant nonparty Peregrine Financial Group, Inc. ("PFG") is a futures and securities broker. PFG is and was at all relevant times located at 311 West Monroe, Suite 1300,

Chicago, Illinois 60606. PFG was registered as a futures commission merchant ("FCM") with the U.S. Commodity Futures Trading Commission ("CFTC") at relevant times. PFG is protected by the bankruptcy stay set forth in Section 362 of the U.S. Bankruptcy Code, 11 U.S.C. §362. In these circumstances, Plaintiffs have not named PFG as Defendant.

## PARTIES

4. Plaintiff Beau Wolinsky ("Wolinksy") is a natural person residing in Danville, Kentucky. Wolinsky maintained an account at PFG; he has lost money and other assets deposited at PFG; and Wolinsky believes that his money and other assets were commingled by PFG with PFG's own funds, or otherwise converted by PFG, in violation of applicable law.

5. Wolinsky is President and CEO at K.C. Capital Management, Inc. ("K.C. Capital"), a corporation organized and existing under the laws of the State of Kentucky with its principal place of business in Danville, Kentucky, and is a commodity trading advisor ("CTA"). K.C. Capital advises investors with customer accounts maintained at PFG; its investors have lost money and other assets deposited at PFG; and K.C. Capital believes that its investors' money and other assets were commingled by PFG with PFG's own funds, or otherwise converted by PFG, in violation of applicable law.

6. Defendant Russell R. Wasendorf, Sr. ("Wasendorf, Sr.") was the CEO and sole owner of significant nonparty PFG at relevant times.

7. Defendant Russell R. Wasendorf, Jr. ("Wasendorf, Jr.") was the President and Chief Operating Officer of significant nonparty PFG at relevant times.

8. Defendant Neil J. Aslin ("Aslin") was the Vice Chairman of significant nonparty PFG at relevant times.

9. Defendant Brenda Cuypers ("Cuypers") was the Chief Financial Officer of significant nonparty PFG at relevant times.

10. Defendant Susan O'Meara was the Chief Compliance Officer of significant nonparty PFG at relevant times.

11. Plaintiffs allege on information and belief that at all relevant times an unknown number of persons, referred to as Defendants John Does 1–10, inclusive, were engaged in the commingling of customer funds with PFG's own funds, or otherwise converting funds for PFG's use, in violation of applicable law as alleged herein. Plaintiffs are presently unaware of the true names and identities of those Defendants referenced herein as John Does 1–10. Any reference made to such Defendants by specific name or otherwise, individually or plural, is also a reference to the actions of John Does 1–10 inclusive.

## FACTS UNDERLYING THE ACTION

12. Nonparty Defendant Peregrine Financial Group, Inc. ("PFG") is a registered futures commission merchant ("FCM"). FCMs receive money, securities, and other property from their customers to margin, guarantee, or secure the customers' futures and options trades. Under the Commodity Exchange Act (the "Act"), 7 U.S.C. §§1 et seq., the Act and the Commissions Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§1 et seq., FCMs are required to segregate and separately account for all customer funds.

13. From at least February 2010 through the present ("relevant time"), nonparty Defendant PFG and/or Defendants have failed to maintain adequate customer funds in segregated accounts. That shortfall exceeds and has exceeded $200 million. Nonparty Defendant PFG and/or Defendants have used customer funds for purposes other than those intended by its

customers, and consequently, have misappropriated these funds. The whereabouts of the funds is current unknown.

14.     Additionally, during at least this same relevant time, PFG and/or Defendants have filed false reports with the Commodity Futures Trading Commission ("CFTC") regarding the amount of customer segregated funds held by PFG.

15.     At all relevant times to this Complaint, PFG kept its segregated customer funds in account XXXX1845 ("1845 customer seg account") at a U.S. Bank branch in Cedar Falls, Iowa. Wasendorf Sr. controlled that account as one of its three signatories. Upon information and belief, the other individual defendants were signatories on the 1845 customer seg account.

16.     In July 2012, the National Futures Association ("NFA") (a not-for-profit industry membership corporation formed as a registered futures association under Section 17 of the Act, 7 U.S.C. § 21, and responsible for monitoring and auditing PFG for compliance with the minimum financial and related reporting requirements of the domestic exchanges of which PFG was a member) conducted an audit of PFG. In connection with the audit, PFG and the individual defendants represented to NFA that it held in excess of $220 million in the 1845 customer seg account, when, in fact, that account held approximately only $5.1 million.

17.     Since at least February 2010, PFG and Wasendorf Sr. have failed to maintain adequate customer funds in segregated accounts and have misappropriated those customer funds for purposes other than intended by its customers.

18.     On or about February 28, 2010, PFG records showed a balance of approximately $207 million in the 1845 customer seg account. PFG had received at least that amount from customers. However, the actual balance in the account was less than $10 million.

19. On or about March 30, 2011, PFG records showed a balance of approximately $218 million in the 1845 customer seg account. PFG had received at least that amount from customers. However, the actual balance in the account was less than $10 million.

20. On or about July 9, 2012, PFG records showed a balance of approximately $225 million in the 1845 customer seg account. PFG had received at least that amount from customers. However, the actual balance in the account was approximately $5 million.

21. On information and belief, on or about July 9, 2012, Wasendorf Sr. attempted to commit suicide at PFG offices in Cedar Rapids, Iowa. He is reported to be in a coma as a result of that attempt.

22. By this conduct, PFG and Defendants have engaged, are engaging, or are about to engage in acts and practices that violate certain provisions of the Act and Regulations.

23. Based on the foregoing, PFG, through Defendants Wasendorf Sr., Wasendorf Jr., Aslin, Cuypers, O'Meara and/or John Does 1–10, has violated Section 25 of the Act, which provides customers with a private right of action against FCMs that violate the Act. PFG appears to have violated Sections 4b(a)(1)(A) and (C) and 4d of the Act by failing to segregate customer funds and commingling them with its own funds, 7 U.S.C. §§ 6b(a)(1)(A), (C), 6d. Defendants Wasendorf Sr., Wasendorf Jr., Aslin, Cuypers, O'Meara and/or John Does 1–10 are also liable for aiding and abetting such violations pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a). Plaintiffs have been injured by these violations because Plaintiffs have currently lost money, securities, and other property with PFG.

## CLASS ALLEGATIONS

24. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP").

25. The Class in this action ("Class") consists of persons, other than Defendants, their employees, affiliates and agents, who held money or other assets in PFG accounts as of any time during the period February 2010 to the present ("Class Period").

26. At minimum, hundreds of people are believed to be members of the Class, and those persons or entities are geographically dispersed. Therefore, joinder is impracticable pursuant to FRCP Rule 23(a)(1).

27. Common issues of fact or law predominate over individual issues within the bounds of FRCP Rule 23(a)(2). Common issues of law and fact include but are not limited to:

    a. whether PFG commingled funds held in customer accounts with its own funds;

    b. whether PFG and Defendants violated the Act;

    c. whether a constructive or actual trust should be impressed upon the ill-gotten gains obtained by Defendants as fruits of their misconduct; and

    d. the sum of Plaintiffs' and the Class's damages.

28. Plaintiffs' interests are typical of, and not antagonistic to the interests of, the Class, meeting the requirement of FRCP Rule 23(a)(3).

29. Plaintiffs have retained competent counsel experienced with class actions and commodities litigation and intent to vigorously prosecute this action, meeting the requirement of FRCP Rule 23(a)(4).

30. Common issues predominate. A class action is superior to all other methods for the fair and efficient adjudication of this controversy. Indeed, a class action is the only method by which Plaintiffs and the Class can efficiently seek redress and obtain a uniform adjudication of their claims. Thus, Plaintiffs meet the requirements of FRCP Rule 23(b)(3)

31. The size of the individual damages is small in comparison to the complexity and scope of the Defendants' alleged unlawful conduct.

32. Plaintiffs do not anticipate any difficulties in the management of this action as a class action.

## VIOLATION OF THE COMMODITY EXCHANGE ACT

## COUNT I

### Violations of Sections 4b(a)(1)(A) and (C) of the Act
### (Fraud in Connection with Commodity Futures Contracts)

33. Plaintiffs incorporate and re-allege each of their previous allegations as though fully set forth herein.

34. This claim is asserted against Defendants Wasendorf Sr., Wasendorf Jr., Aslin, Cuypers, O'Meara and/or John Does 1–10 on behalf of Plaintiffs and members of the putative class who held money or other assets in PFG customer accounts as of any time during the Class Period and were damaged thereby.

35. Sections 4b(a)(1)(A) and (C) of the Act make it unlawful:

> [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity . . . for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, -- (A) to cheat or defraud or attempt to cheat or defraud the other person; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for…the other person[.]

Each of the Defendants, individually and/or in concert, in or in connection with commodity futures contacts made, or to be made, for or on behalf of other persons, cheated or defrauded, or attempted to deceive customers by, among other things, knowingly making transfers of customer segregated funds in a manner designed to avoid detection, improperly diverting customers' cash

7

and commingling it with PFG's own funds, and converting customer funds for its own use in violation of Sections 4b(a)(1)(A) and (C).

36. Each of the Defendants was a top officer and controlling person of PFG and had direct involvement in its day-to-day operations.

37. Defendants had actual knowledge of the facts alleged herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Defendants knowingly or recklessly filed false reports with the CFTC in order to avoid detection. Defendants' acts were done knowingly or recklessly and for the purpose and effect of concealing PFG's financial condition from its customers.

38. As a direct and proximate result of the wrongful conduct of the Defendants named in this Count, Plaintiffs and the other putative class members suffered damages.

## COUNT II

### Violation of Section 4d of the Act
### (Failure to Separately Maintain Customer Accounts)

39. Plaintiffs incorporate and re-allege each of their previous allegations as though fully set forth herein.

40. This claim is asserted against Defendants Wasendorf Sr., Wasendorf Jr., Aslin, Cuypers, O'Meara and/or John Does 1–10 on behalf of Plaintiffs and members of the putative class who held money or other assets in PFG customer accounts as of any time during the Class Period and were damaged thereby.

41. Section 4d of the Act sets forth an FCM's obligations to separately maintain and account for customer funds. The use of customer's funds "to margin or guarantee the trades or contracts, or to secure or extend the credit, of any customer or person other than the one for

8

whom the same are held" is strictly prohibited. §4d(a)(2) of the Act. Section 4d provides that one customer's funds shall not be used to margin or guarantee the trades or extend the credit of any other customer or person.

42. Each of the Defendants, individually and/or in concert, failed to separately maintain and account for customer funds in violation of Section 4d of the Act.

43. Each of the Defendants was a top officer and controlling person of PFG and had direct involvement in its day-to-day operations.

44. Defendants had actual knowledge of the facts alleged herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Defendants' acts were done knowingly or recklessly and for the purpose and effect of concealing PFG's financial condition from its customers.

45. As a direct and proximate result of the wrongful conduct of the Defendants named in this Count, Plaintiffs and the other putative class members suffered damages.

## COUNT III

### Violation of Section 13(a) of the Act, 7 U.S.C. §13c(a)
### Aiding and Abetting PFG's Fraud

46. Plaintiffs incorporate and re-allege each of their previous allegations as though fully set forth herein.

47. Section 13(a) of the Act provides:

> Any person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any of the provisions of th[e] Act [or Regulations], or who acts in combination or concert with any other person in any such violation, or who willfully causes an act to be done or omitted which if directly performed or mitted by him or another would be a violation of the [Act or Regulation] may be held responsible for such violation as a principal.

48. PFG, in or in connection with commodity futures contracts made, or to be made, for or on behalf of other person, cheated or defrauded, or attempted to cheat or defraud, customers and willfully deceived or attempted to deceive customers by, among other things, knowingly making transfers of customer segregated funds in a manner designed to avoid detection, improperly diverting customers' cash and commingling it with its own funds, and converting customers funds for its own use in violation of Sections 4b(a)(1)(A) and (C) of the Act.

49. PFG filed to separately maintain and account for customer funds in violation of Section 4d of the Act.

50. Defendants, PFG's officers, knew that PFG engaged in these fraudulent acts.

51. Separate from knowledge of the fraud by PFG officers, the facts and circumstances demonstrate that Defendants were on notice of numerous facts that pointed to PFG's fraud. Defendants helped create the appearance that PFG's customer accounts were separate from each other. While Defendants helped PFG create the appearance of separate customer accounts, Defendants also assisted in transferring PFG segregated funds in a manner designed to avoid detection; improperly diverting PFG customer cash and commingling it with its own funds, and converting PFG customer funds for its own use to, among other things, fund PFG's trading losses.

52. Accordingly, Defendants are liable, jointly and severally, pursuant to Section 13(a) of the Act, 7 U.S.C. §13c(a), for aiding and abetting PFG's violation of the Act.

53. As a direct and proximate result of the wrongful conduct of the Defendants named in this Count, Plaintiffs and the other putative class members suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment:

A. Ordering that this action proceed as a class action as to all claims previously alleged;

B. Awarding money damages, including prejudgment interest, on each claim in an amount to be established at trial;

C. Awarding statutory attorneys' fees and costs, and other relief;

D. Impressing a trust on the ill-gotten gains of Defendants in the ultimate res of which each Class member shall have an undivided interest;

E. Directing further proceedings to determine the distribution of the trust among Class members, <u>inter</u> <u>se</u>, and awarding attorneys' fees and expenses to Plaintiffs' counsel; and

F. Granting such other relief as this Court may deem just and proper.

**JURY DEMAND**

Pursuant to FRCP Rule 38(a), Plaintiffs demand a jury trial of all issues triable by jury.

Dated: July 17, 2012

            Respectfully submitted,

            /s/ Robert M. Foote
            Robert M. Foote, Esq. (#03124325)
            Matthew J. Herman, Esq. (#06237297)
            FOOTE, MEYERS, MIELKE & FLOWERS LLC
            3 North Second Street, Suite 300
            St. Charles, IL 60174
            Tel. No.: (630) 232-6333
            Fax No.: (630) 845-8982
            rmf@foote-meyers.com
            mherman@foote-meyers.com

        Liam O'Brien, Esq. *(Pro Hac Vice Pending)*
        McCORMICK & O'BRIEN, LLP
        9 E. 41st Street, 4th Floor
        New York, New York 10016
        Telephone (212) 286-4471
        Facsimile (212) 504-9574
        lobrien@mcoblaw.com


        Mark K. Gray, Esq. *(Pro Hac Vice Pending)*
        GRAY & WHITE
        713 E. Market Street, Suite 200
        Louisville, Kentucky 40202
        Telephone (502) 805-1800
        Facsimile (502) 618-4059
        mgray@grayandwhitelaw.com

        Joe R. Whatley, Jr., Esq. *(Pro Hac Vice Pending)*
        WHATLEY KALLAS, LLC
        380 Madison Avenue, 23rd Floor
        New York, New York 10017
        Telephone (212) 447-7060
        Facsimile (800) 922-4851
        jwhatley@whatleykallas.com

        Richard P. Rouco, Esq. *(Pro Hac Vice Pending)*
        QUINN, CONNOR, WEAVER
        DAVIES & ROUCO, LLP
        2700 Highway 280 S
        Mountain Brook Center, Suite 380
        Birmingham, Alabama 35223
        Telephone (205) 870-9989
        Facsimile (205) 803-4143
        rrouco@qcwdr.com

        *COUNSEL FOR PLAINTIFF*